Guerrero-Ramirez v. TSBME 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-204-CV





LUIS E. GUERRERO-RAMIREZ, M.D.,



 APPELLANT


vs.





TEXAS STATE BOARD OF MEDICAL EXAMINERS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 92-07376, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 The Texas State Board of Medical Examiners ("the Board") issued an order
revoking Luis Guerrero-Ramirez's license to practice medicine on April 9, 1992. Guerrero
sought judicial review of the order in district court. The district court affirmed the order and
Guerrero has appealed to this court. We will affirm.



BACKGROUND


 In a formal complaint filed on July 25, 1991, the Board charged Guerrero with five
separate violations of the Medical Practice Act. Tex. Rev. Civ. Stat. Ann. art. 4495b (West
Supp. 1993) ("Medical Practice Act"). The complaint charged Guerrero with (1) directly or
indirectly aiding or abetting the corporate practice of medicine by the Human Relations Institute,
a provider of psychological services that was not duly licensed to practice medicine; (2)
fraudulently billing insurance companies for services he did not perform, constituting
unprofessional or dishonorable conduct likely to deceive or defraud the public; (3) administering
dimethyl sulfoxide intravenously without providing patients a written statement informing them
that the United States Food and Drug Administration had not approved dimethyl sulfoxide for this
use; (4) failing to inform patients of alternative methods of treatment other than injections of
dimethyl sulfoxide; and (5) neglecting to adequately cleanse the skin and needles before
administering intravenous injections of dimethyl sulfoxide, resulting in severe infection in one of
his patients, which constituted failure to practice medicine in an acceptable manner consistent with
the public health and welfare. The Board's complaint stated that these violations of the Medical
Practice Act were grounds for cancellation, revocation or suspension of Guerrero's license to
practice medicine pursuant to section 4.01 of the Act, and that his practice of medicine posed a
continuing threat to the public welfare. On July 24, 1991, the hearings director sent Guerrero
notice of a hearing to address the complaint to be held on September 25, 1991. 

 On August 1st, Guerrero filed a motion for continuance of a "preliminary
hearing." (1) On August 5th, the hearing examiner denied this first general motion for continuance
but explained that should Guerrero be unduly prejudiced by any deadline or any particular
discovery request, he would have ample opportunity to file a motion requesting appropriate relief. 
On August 20th, Guerrero filed a motion to substitute Senfronia Thompson as his attorney of
record. On the same day, he filed a motion for legislative continuance as provided by Texas Civil
Practice and Remedies Code section 30.003. Tex. Civ. Prac. & Rem. Code Ann. § 30.003 (West
1986 & Supp. 1993). In this motion, appellant's attorney stated that she had actively participated
in the preparation of the case and intended to actively participate in the presentation of evidence
at the upcoming hearing. Guerrero and Thompson requested that the hearing be continued until
at least thirty days after adjournment of the first called session of the legislature. The hearing
examiner granted this motion for continuance on September 6th and rescheduled the hearing for
October 15, 1991. The record does not reflect that Thompson objected to this date.

 On September 27th, appellant filed his third motion for continuance which the
hearing officer denied on October 2nd. (2) On October 7th, appellant's attorney obtained an order
from a district judge "protecting" her from any trial or discovery matters until completion of a
criminal case in Houston in which she was counsel of record. Appellant then sought a temporary
restraining order in Travis County district court to prevent the Board from holding the October
15th hearing. The Travis County district court granted the temporary restraining order on
October 14th, but requested that Thompson provide the Board with possible dates for rescheduling
the hearing. She did not, however, advise the Board or the hearing examiner of any convenient
dates. On October 17th, the Board's attorney sent Thompson a letter proposing that the hearing
be reset for November 18th. When Thompson again failed to respond, the hearing officer signed
an order on October 21st setting the hearing for November 18th. On October 22nd, Thompson
informed the hearing examiner by letter that she had a trial setting in Harris County on November
18th; she suggested that the hearing be reset for either January 13th, 20th, or 27th. On November
11th, Guerrero filed a motion for continuance of the November 18th hearing. The hearing
examiner denied this fourth motion for continuance with the following explanation:



The Motion for Continuance contains certain misstatements. First, Examiner's
Order No. 11, dated October 21, 1991, was issued one day prior to a letter from
Respondent's counsel discussing a trial setting for Larry Hendrix in the 179th
District Court of Harris County, Texas for November 18, 1991. That letter, dated
October 22, 1991, did not request a continuance of the hearing date. Instead, it
was treated by the Hearing Examiner for what it appeared to be on its face--a
response to an earlier request from the staff attorney for hearing date on November
18, 1991. No Motion for Continuance of the November 18, 1991, hearing was
received until November 11, 1991.


* * * *


The Administrative Procedure and Texas Register Act only requires ten days notice
of hearing. Respondent has been given approximately twenty-eight (28) days
notice of hearing in this instance. Only one week prior to hearing, a continuance
is requested. As described above, that request contains numerous misstatements. 
Further (as with several pre-trial motions filed by the Respondent in this
proceeding) no representation is made that there has even been an attempt to arrive
at agreement with the staff attorney for either scheduling or discovery. Due
process does not require that the course and conduct of administrative proceedings
grind to a halt to afford eleventh-hour attempts at delay.



On November 15th and November 18th, Thompson advised the Board that she would seek another
temporary restraining order. Thompson did not appear on either day and did not obtain a
temporary restraining order. The administrative hearing was held in the absence of both Guerrero
and his attorney on November 18, 1991. At this hearing, the hearing examiner stated:



My order [denying the November 11th motion for continuance] was served both
by facsimile and by first-class mail upon the representative for the Board, as well
as Ms. Senfronia Thompson, the attorney of record for the Respondent physician. 
And as we have noted, the Respondent physician--neither the Respondent physician
nor his attorney of record is present in the hearing today. We are going forward
with the direct evidence from the Board.



The Board attorney then elicited evidence of Guerrero's violations of the Medical Practice Act. 
 Between November 18th and April 9th, Guerrero filed another motion for
continuance, (3) sought a temporary restraining order to prevent the Board from deciding the case,
and finally attempted unsuccessfully to obtain a temporary injunction. On April 9, 1992, in a
meeting which Guerrero did not attend, the Board of Medical Examiners voted to revoke his
license to practice medicine based on the hearing examiner's findings of fact and conclusions of
law.

 In this appeal Guerrero brings four points of error: (1) that it was an abuse of
discretion to deny his motion for continuance of the November 18, 1991, hearing and that the
denial violated his constitutional rights; (2) that he did not receive proper notice pursuant to
section 2001.054 of the Administrative Procedure Act (4) of the charges against him; (3) that there
is not substantial evidence to support the Board's order revoking his license to practice medicine;
and (4) that the Board abused its discretion by revoking his license. 



DISCUSSION


1.  Motion for Continuance

 Appellant has directed this Court to no particular statutory provision or regulation
governing applications for continuances in the administrative agency setting. Rather, he asserts
that section 4.06 of the Medical Practice Act and section 2001.051 of the APA prohibit a hearing
officer from conducting an administrative proceeding in the absence of the licensee's attorney. 
We disagree. The Medical Practice Act section 4.06 states: "In all hearings under this
subchapter, the respondent shall have the right to appear either personally or by counsel or both." 
Medical Practice Act § 4.06. This section provides that Guerrero had the right to appear at the
hearing himself, send his attorney to represent him, or attend the hearing accompanied by his
attorney. This section does not indicate that the hearing cannot proceed if the party or his attorney
chooses not to appear. The right to be present at the hearing and to be represented by an attorney
is precisely that--a right that a party may exercise or waive. See 22 Tex. Admin. Code § 187.13
(1989) (stating that any party may appear at an adjudicative hearing and be represented by an
attorney at law and that this right may be waived). Similarly, section 2001.051 of the APA
requires that an opportunity be afforded all parties to respond and present evidence and argument
on all issues involved in a contested case. Guerrero was given the opportunity to appear at the
hearing, but chose not to attend. (5)
 We reject appellant's interpretation of these statutes as
absolutely prohibiting the hearing officer from proceeding with the hearing in the absence of
counsel for appellant. At the same time, we recognize that the right to counsel and fair
representation at an administrative hearing is one of constitutional dimension. Mosley v. St. Louis
Southwestern Ry., 634 F.2d 942, 946 (5th Cir. 1981), cert. denied, 452 U.S. 906 (1981). 

 The statutes that require the president of the Board of Medical Examiners to
conduct hearings vest in him and his hearing officer the power to consider and determine requests
for postponements of those hearings in the interest of fairness. Medical Practice Act § 4.05; APA
§ 2001.051; 22 Tex. Admin. Code § 187.26(b)(7) (1989) (stating that hearings officers have the
authority to regulate the course and conduct of the hearing). This power is analogous to the
inherent power of a court to grant continuances in judicial proceedings. See Tex. R. Civ. P. 251,
252. The decision to grant a continuance rests within the sound discretion of the trial court. 
Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex. 1983). Absent a clear abuse of discretion,
we will not disturb a trial court's decision to deny a motion for continuance. State v. Crank, 666
S.W.2d 91, 94 (Tex. 1984). The United States Supreme Court has advised us that there is no
mechanical test for determining when the denial of a continuance is so arbitrary as to violate due
process. Ungar v. Sarafite, 376 U.S. 575, 591 (1964). Rather, the reviewing court must consider
the circumstances presented to the trial judge at the time the request is denied. Id. The ultimate
test of due process of law in an administrative hearing is the presence or absence of rudiments of
fair play long known to our law. Rector v. Texas Alcoholic Beverage Comm'n, 599 S.W.2d 800
(Tex. 1980). Mindful of this standard, we will consider whether, in light of all the circumstances,
the hearing officer abused his discretion by denying the motion for continuance of the November
18th hearing.

 Appellant states in his brief, without any references to the record, that his attorney
set other cases for trial on November 18th in reliance on statements made by the Board's attorney
that if the hearing did not take place on October 15th, the Board could not reset it until some time
in March 1992. As a result, appellant's counsel could not appear at the hearing on November
18th. We note that absence of counsel is not a ground for a continuance except at the discretion
of the trial court. Gendebien v. Gendebien, 668 S.W.2d 905, 907 (Tex. App.--Houston [14th
Dist.] 1984, no writ). The hearing officer was faced with a situation in which counsel for
appellant had requested and received two continuances and a temporary restraining order yet failed
to provide the Board with suitable dates to reset the hearing even though both the trial court that
issued the October 14th temporary restraining order and the Board attorney requested such dates. (6) 
On October 17th, the attorney for the Board wrote Thompson suggesting the hearing be
rescheduled for November 18th. When the Board still had received no response, the hearing
officer set the hearing for November 18th. It was not until November 11th that appellant's
attorney filed the fourth motion for continuance. (7) 

 There is no evidence in the record that appellant or his attorney ever made any
attempt to arrive at a mutually convenient date for the hearing. Moreover, neither appellant nor
his attorney has made any showing that Thompson was the only attorney who could represent
Guerrero at the hearing. Several of the pleadings and motions filed on Guerrero's behalf were
signed by Thompson under a signature block bearing the firm name Caggins, Hartsfield &
Ogletree, and her letterhead lists her as serving of counsel to that firm. Indeed, Mr. Caggins
participated in the September 13, 1991, telephone conference, and Lydia Gardner was the attorney
who sought a temporary restraining order to prevent the hearing from taking place on October 15,
1991. Furthermore, we believe it significant that upon discovering that the motion to continue
the November 18th hearing had been denied, rather than attempting to find another attorney who
could appear on Guerrero's behalf, Thompson counseled her client not to attend the hearing. 
Appellant has made no showing that another attorney could not have become sufficiently familiar
with the issues to represent Guerrero at the November 18th hearing. In light of the totality of the
circumstances and the events that occurred before making the decision not to continue the hearing,
we cannot say that the hearing examiner abused his discretion in refusing to grant appellant's
fourth motion for continuance. We conclude that the denial was not arbitrary or unreasonable,
nor did it violate Guerrero's constitutional rights. Appellant's first point of error is overruled.



2.  Statutory Notice Requirements

 In his second point of error, appellant contends that the Board of Medical
Examiners did not meet the notice requirements of APA section 2001.054 which provides that



[n]o revocation of any license . . . is effective unless, prior to the institution of
agency proceedings, the agency gave notice . . . of facts or conduct alleged to
warrant the intended action, and the licensee was given an opportunity to show
compliance with all requirements of law for the retention of the license.



Appellant maintains that there is no evidence in the record showing that he was notified before
the Board's filing its formal complaint on July 24, 1991, of the concerns set forth in the fifth
charge of the complaint, that is, that appellant's administration of dimethyl sulfoxide constituted
failure to practice medicine in an acceptable manner consistent with the public health and welfare
in violation of Medical Practice Act section 3.08(18). Appellant claims that as a result of the
failure to comply with the statutory notice provisions, the Board's findings of fact and conclusions
of law that his practice of medicine was inconsistent with the public health and welfare and poses
a continuing threat to public health and welfare should be given no effect. Section 2001.054 of
the APA requires that an agency give notice and provide the licensee an opportunity to be heard. 
This means notice of facts or conduct that allegedly warrant license suspension or revocation, an
opportunity to participate and defend at a hearing, and an opportunity to show that no
requirements of the law for the retention of the license were ever violated. Grace v. Structural
Pest Control Bd. of Tex., 620 S.W.2d 157, 160 (Tex. Civ. App.--Waco 1981, writ ref'd n.r.e.). 
Section 2001.054 does not require any notice before the complaint is filed, as appellant alleges,
but rather that the complaint itself adequately inform the licensee of the subject of the adjudicative
hearing. The formal complaint issued by the Board on July 24, 1991, specifically charges
appellant with failing to practice medicine in an acceptable manner. The complaint states:



21. The procedure used by Respondent for the injection of lidocaine was to make
a small bleb under the skin and then inject through the bleb a subcuinjection
of lidocaine. No form of alcohol, betadine or cleansing solution was used
on the skin prior to the injections.


 * * * *


23. On or about December 8, 1988, patient J.S. was treated by Respondent with
trigger point injections of lidocaine and intravenous therapy for treatment of
a right hand and wrist sprain.


 * * * *


25. As the result of Respondent's injections, patient J.S., on or about December
14, 1988, developed a severe beta hemolytic strep infection requiring
hospitalization. Patient J.S. went into massive septic shock.


 * * * *


27. The infections developed by patient J.S. were the result of the professional
failure of Respondent to practice medicine in an acceptable manner consistent
with public health and welfare. Respondent violated Section 3.08(18) of
Article 4495b V.A.C.S. (Texas Medical Practice Act).



This formal complaint provided Guerrero with notice of the Board's intention to consider whether
his practice of medicine was inconsistent with the public health and welfare. Appellant's second
point of error is overruled.



3.  Substantial Evidence 

 In his third point of error, appellant challenges the evidence supporting the Board's
order of April 9, 1992, immediately revoking his license to practice medicine. The Board
concluded that Guerrero violated several provisions of the Medical Practice Act; any one of these
violations would provide grounds for revoking his license. While this Court need only find
substantial evidence supporting one ground for revocation in order to uphold the Board's order,
we conclude that two of the three grounds given by the Board are independently sufficient to
support the revocation decision. (8)

 The Board found that Guerrero administered "trigger point" injections to one of his
patients in a manner that caused her to develop a severe beta hemolytic strep infection that spread
throughout her body and endangered her life. The Board concluded that Guerrero's treatment of
this patient demonstrated a disregard for her health and constituted a failure to practice medicine
in an acceptable manner consistent with public health and welfare, a violation of section 3.08(18)
of the Medical Practice Act and grounds for revocation of his license. See Medical Practice Act
§ 4.01. Sufficient evidence exists in the record to support the Board's conclusion. 

 At the November 18, 1991, hearing, one of Guerrero's patients testified that
Guerrero administered multiple "trigger point" injections at various points on her body--between
her eyes, in her scalp and neck, in her forearms and hands, in her abdomen and "liver," and in
her legs and feet--as treatment for migraine headaches, depression, and other physical ailments. 
Additionally, the patient testified that Guerrero made vaginal injections "to melt away scar tissues"
from an earlier hysterectomy. She testified that he made repeated injections, filling the syringe
from the same vial and using the same needle. The patient testified that the doctor did not sterilize
the skin before injecting her. She further testified that she declined to follow Guerrero's
instructions to drink her morning urine, which he advised her contained helpful antibodies, stating
"I couldn't bring myself to do that." The patient testified that her treatment included injection of
intravenous solutions containing various mixtures of dimethyl sulfoxide, hydrogen peroxide,
calcium glutamate, potassium chloride, magnesium and sodium bicarbonate. 

 When this patient complained of severe pain, redness, and swelling following a
round of injections, the doctor responded by giving her more injections, "an extreme concentrated
amount of trigger points," more intravenous solutions and pain pills. The patient testified that
despite her severe pain, swelling and redness, Guerrero declined her request for medication, did
not consult with any other doctor, and did not recommend hospitalization. He said, "I'm doing
everything that you need." Guerrero administered trigger point injections to this patient on
December 8, 9, 12, and 13, 1988. On December 14th, she was taken by ambulance to the
emergency room of Katy Medical Center where her left leg was so swollen that "it was almost
splitting spontaneously." The staff at the medical center performed extensive fasciotomies,
incisions all the way to the bone to remove the pus from the massive infection found throughout
the patient's body. The patient testified that the fasciotomies were performed on both arms, her
abdomen, her left leg from the ankle to the hip, under her right armpit, and on her scalp. Part
of one finger was amputated. The patient's testimony was substantiated by the introduction of her
medical records.

 The patient's testimony was followed by the expert testimony of Dr. Gail Wardlaw,
a staff physician at Brenham State School, previously a private physician who had treated this
patient upon her arrival in the emergency room on December 14, 1988. Dr. Wardlaw testified
that the patient arrived in the emergency room with a beta hemolytic strep infection and massive
septic shock. She lost blood pressure and lucidity: "She was slipping away, in other words. We
were afraid that she would die down in the emergency room." Multiple surgeries were required
to eliminate the massive pus and infection from the patient's system as quickly as possible: 
"[A]bscesses were opened to be drained, but wherever the surgeon opened, more areas appeared,
so that's why we have the extensive surgery, you know, going from--her extremities were opened,
flayed, basically." The surgery team feared she would not survive the operations. Kidney failure
followed the surgery, requiring dialysis. Her bone marrow failed, placing her in danger of
hemorrhaging. The patient developed post-operative pneumonia. 

 Dr. Wardlaw testified that this patient would have been in poor condition and
presenting symptoms requiring hospitalization on the day before she was admitted to the
emergency room, the day of her last visit to Guerrero's office. After reviewing Guerrero's
records of this patient, Dr. Wardlaw testified that she tied the patient's massive infection back to
the "trigger point" injections. She noted that strep infection is compatible with something being
introduced from the outside when the integrity of the skin is broken. Dr. Wardlaw also noted that
the patient's infection was localized at various parts of her body, consistent with her acupuncture
treatment. She testified that if Guerrero injected the patient from the same vial, using the same
needle repeatedly, it was very possible that the vial was contaminated, and that the injections
could introduce bacteria into the patient's body. Commenting on Guerrero's intravenous therapy,
Dr. Wardlaw labeled his solutions "cocktails," "a concoction of his own device," and a dangerous
concoction at that. She testified that hydrogen peroxide is never administered intravenously and
that potassium chloride might be used in very, very small amounts under close scrutiny to
replenish potassium but that both substances are potentially lethal even in small amounts. She
also opined that dimethyl sulfoxide was so dangerous it was used only as a medicine of last resort
for urethral cystitis, a condition not presented by this patient. 

 After treating this patient and reviewing her medical records, Dr. Wardlaw
concluded that Guerrero's treatment of this woman reflected a failure to practice medicine in an
acceptable manner consistent with public health and welfare. "I think that he has total disregard
for the rules governing medical practice. . . . He has a flagrant disregard for human life, and this
makes him dangerous." Based on this testimony, the Board determined that Guerrero's practice
of medicine was unacceptable and posed a continuing threat to the public welfare. 

 The standard for reviewing administrative decisions of the Board of Medical
Examiners is substantial evidence as provided by the APA. Medical Practice Act § 4.09(b). 
Section 2001.173 of the APA authorizes a reviewing court to test an agency's findings, inferences,
conclusions, and decisions to determine whether they are reasonably supported by substantial
evidence in view of the reliable and probative evidence in the record as a whole. Texas Health
Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). The
reviewing court may not substitute its judgment for that of the agency. Railroad Comm'n v.
Continental Bus Sys., Inc., 616 S.W.2d 179, 181 (Tex. 1981). The correct standard when
reviewing an order suspending a license to practice medicine is whether the evidence as a whole
is such that reasonable minds could have reached the conclusion that the agency must have reached
in order to justify its action. Dotson v. Texas State Bd. of Medical Examiners, 612 S.W.2d 921
(Tex. 1981). We conclude that the Board's determination that Guerrero's practice of medicine
was inconsistent with the public welfare is supported by substantial evidence. 

 The Board also found that Guerrero violated section 3.08(15) of the Medical
Practice Act by aiding or abetting the practice of medicine by a corporation not licensed by the
Board to practice medicine, and section 3.08(4) of the Act by signing billing or health insurance
claims forms without providing any direct or indirect patient treatment constituting
"unprofessional or dishonorable conduct likely to deceive, defraud or injure the public." 
Appellant maintains that there is not substantial evidence to support these conclusions. 

 At the hearing on November 18th, Dean Gossen, an investigator for the Board of
Medical Examiners, testified that Guerrero entered into a written contract with Christopher
Wright, a psychotherapist who owns and operates a corporation called the Human Relations
Institute. Neither the Human Relations Institute nor Wright is licensed to practice medicine by
the Board of Medical Examiners. According to Gossen's testimony, Guerrero and Wright
executed a contract in October 1988 whereby Guerrero agreed to sign insurance forms once or
twice a month. Guerrero did not review any medical records or administer any type of medical
treatment. Gossen stated that Guerrero "basically admitted that his purpose was to deliver a
signature on the insurance forms." Billing receipts from the Human Relations Institute listed
Guerrero as a psychiatrist and Wright as executive director. There is no evidence in the record
that Guerrero had ever received any psychiatric training. Gossen testified that Guerrero stated
that his only duties at the Human Relations Institute were to sign the insurance forms in return for
which he received fifteen percent of the insurance companies' payments to the Human Relations
Institute. Gossen also testified that Wright is not a licensed social worker, a psychiatrist or
psychologist, and that he needed Guerrero's signature to obtain payment from insurance
companies. 

 Appellant maintains that this evidence is "rank hearsay," and suggests that it
therefore cannot constitute evidence supporting the Board's findings. However, hearsay admitted
without objection does not lack probative value. Tex. R. Civ. Evid. 802. Appellant also asserts
that because he "did not provide a service to the public and was not being paid for providing
medical services" he did not aid in the corporate practice of medicine. A physician violates
section 3.08(15) of the Medical Practice Act if he or she aids or abets, directly or indirectly, the
practice of medicine by any person, association, or corporation not duly licensed to practice
medicine by the Board. Medical Practice Act § 3.08(15). Thus, the issue is not whether Guerrero
provided services to the public, but whether he assisted one who was not licensed to do so. 
Applying the standard of review outlined above, we conclude that substantial evidence exists to
support the Board's findings that Guerrero's contractual relationship with the Human Relations
Institute aided or abetted the practice of medicine by a corporation not licensed by the Board in
violation of Medical Practice Act section 3.08(15), and that his signing billing statements without
providing direct or indirect medical treatment constituted dishonorable and unprofessional conduct
in violation of section 3.08(4) of the Act. Consequently, we overrule appellant's third point of
error.

 In his fourth point of error, appellant challenges the trial-court judgment affirming
the Board's order revoking his license. Appellant claims that the Board's immediate revocation
of his license was an abuse of discretion because he had no opportunity to be represented by
counsel and the Board's findings of fact are not supported by substantial evidence. These
arguments were raised in appellant's first and third points of error and have already been
addressed in this opinion. Appellant also claims that the Board's conclusions of law are not
supported by valid findings of fact. Proper underlying findings of fact should be clear, specific,
non-conclusory, and supportive of the ultimate statutory findings. The findings should relate to
material basic facts and to the ultimate statutory finding they accompany. Charter Medical-Dallas, Inc., 665 S.W.2d at 452. Our review of the record reveals sufficient findings of fact to
support the Board's conclusion that Guerrero violated section 3.08 of the Medical Practice Act,
and that such violation was adequate grounds for revocation of his license. Medical Practice Act
§ 4.01(b).

 Finally, appellant states that the Board's conclusions that he violated various
sections of the Medical Practice Act do not warrant the harsh sanction of revoking his license. 
Because appellant cites no authority to support this contention, we do not address it. Tex. R.
App. P. 74(f). We therefore conclude that the trial court properly affirmed the order of the Board
of Medical Examiners and we overrule appellant's fourth point of error. 

 We affirm the judgment of the trial court.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: December 22, 1993

Publish

1. Though the hearing examiner's order denying the motion does not identify the
nature of the "preliminary hearing" to which Guerrero's motion referred, we assume the
term refers to the adjudicative hearing set for September 25, 1991.
2. This third motion for continuance does not itself appear in the record, but is
evidenced by the hearing examiner's order denying it.
3.   This motion was denied, presumably because there were no proceedings to continue
as the hearing had already taken place.
4.   All citations in this opinion are to the current Administrative Procedure Act rather
than the former Administrative Procedure and Texas Register Act because the recent
codification did not substantively change the law. Act of May 4, 1993, 73d Leg., R.S.,
ch. 268, § 47, 1993 Tex. Sess. Law Serv. 587, 988; id. sec. 1, § 2001.001-.902, 1993 Tex.
Sess. Law Serv. at 737-54 (to be codified as Administrative Procedure Act, Tex. Gov't Code
Ann. § 2001.001-.902) [hereinafter APA].
5. The record reflects that Guerrero was on vacation in Canada on the day of the
hearing. The following exchange took place in the trial court proceeding from which
appellant appeals:


Q (by Guerrero's attorney): Is it your testimony then that you did not
know that there was a hearing supposed to be on November 18th, it was
going to still be held on November 18th?


A (by Guerrero): Yeah. I knew before I left on my trip to Canada. And I
say, "Okay, I will give you call on Friday if I need to fly back on
Saturday or can I stay the weekend over there to do some tourism." . . . 
She said no, everything arranged, don't need to be here Monday to go to
Austin. She said okay.


Q: The reason you didn't come is because your lawyer told you you didn't
have to be here?


A: Right.


The testimony also showed that Thompson knew the motion for continuance of the
November 18th hearing had been denied several days before its scheduled date. We
conclude that this testimony indicates not that Guerrero did not know of the hearing or
that he could not attend, but rather that he chose to follow the advice of his attorney who
counseled him not to appear.

6.   In addition, the record reflects several difficulties encountered in setting dates for
depositions and in securing Thompson's appearance at scheduled depositions. 
7.   In his third motion for continuance, appellant contends that the hearing was set for
November 18th "with the prior knowledge by Hearing Examiner and opposing counsel,
that Attorney Senfronia Thompson was set for jury trial in two cases . . . ." However,
our review of the record reveals that Thompson first brought these trial settings to the
attention of the hearing officer in a letter dated October 22nd, after the Board had
received no objection to the proposed November 18th setting. 
8. One of the grounds for revocation of Guerrero's license was that he failed to notify
a patient in writing that the Food and Drug Administration had not approved his use of
dimethyl sulfoxide. Dimethyl sulfoxide (DMSO) is a chemical noted for its unusual
capacity for penetrating the skin; it is used as a solvent and has been approved for
medical use only in limited circumstances. The Texas Health and Safety Code requires
that notice be given to patients when DMSO is administered in an amount that exceeds
the formulation approved for human use by the Food and Drug Administration. Tex.
Health & Safety Code Ann. § 439.013 (b) (West 1992). Because there was no evidence of
the FDA approved formulation or of the actual formulation of DMSO administered by
Guerrero to the patient in question, the Board does not contest on appeal the lack of
substantial evidence to support revoking Guerrero's license on this ground.