**TEXAS EMPLOYMENT COMMISSION,[1] Appellant,**

v.

**REMINGTON YORK, INC., Appellee.**

No. 05–96–00021–CV.

Court of Appeals of Texas, Dallas.

June 18, 1997.

---

**1.** Effective September 1, 1995, the TEC was renamed the Texas Workforce Commission. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 11.75, 1995 Tex. Gen. Laws 3543, 3621.

Thomas J. Meaney, Office of the Attorney General, Austin, for Appellant.

Patrick C. Guillot, Paul C. Sewell, True & Sewell, L.L.P., Dallas, for Appellee.

Before OVARD, MORRIS and JAMES, JJ.

## OPINION

JAMES, Justice.

The Texas Employment Commission (the Commission) appeals a summary judgment granted in favor of Remington York, Inc. (Remington). The summary judgment reversed a Commission administrative decision granting unemployment benefits to Remington's former employee, James Scott. In two points of error, the Commission complains that the trial court erred in (1) finding it incapable of any authorized action during a vacancy of one commissioner, and (2) holding that a Commission decision made during the vacancy of the commissioner representing the public violates due process. We sustain both points of error; we reverse the trial court's summary judgment and remand this cause to the trial court.

### Texas Unemployment Compensation Act

To understand the factual and procedural background of this case, it is first necessary to understand the procedure for obtaining unemployment benefits when the employer contests the former employee's claim. Claims for benefits are made in accordance with rules adopted by the Commission. TEX. LAB.CODE ANN. § 208.001(a) (Vernon 1996). After an initial claim is filed, the Commission notifies the employer for whom the claimant last worked before the effective date of the claim. *Id.* § 208.002(a). The former employer is directed to promptly notify the Commission of any facts that may adversely effect the claimant's right to benefits or affect a charge to the employer's account. *Id.* § 208.004(a). If it does not timely deliver that notification to the Commission, the employer, with a few exceptions, waives its rights in connection with the claim. *Id.* § 208.004(b). If the employer does provide information raising an issue affecting the claimant's rights to benefits, an examiner determines whether the claimant is entitled to receive benefits. *Id.* § 212.051.

Either the claimant or the employer may appeal the determination of the examiner. *Id.* § 212.053.[2] The appeal is to an appeal tribunal established by the Commission and composed of a salaried examiner. *Id.* § 212.101. The appeal tribunal affirms or modifies the determination after giving the parties "reasonable opportunity for fair hearing." *Id.* § 212.102; *see also* 40 TEX.AD-MIN.CODE § 815.16 (West 1997). The parties have the right to subpoena witnesses. TEX. LAB.CODE ANN. § 212.003. A complete record is kept of the proceeding and all testimony is recorded. *Id.* § 212.002. The parties to the appeal are notified of the appeal tribunal's decision and the reasons for the decision. *Id.* § 212.103.

The Commission may remove to itself or transfer to another appeal tribunal the proceedings on a claim pending before an appeal tribunal. *Id.* § 212.105(a). If the Commission removes the proceeding to itself, a quorum of the Commission hears the proceeding. *Id.* § 212.105(b).

If the determination is made by the appeal tribunal, the Commission may (1) on its own motion, affirm, modify, or set aside the decision on the basis of the evidence previously submitted; (2) direct the taking of additional evidence; or (3) permit any of the parties to the decision to initiate a further appeal before the Commission. *Id.* § 212.151. The Commission promptly notifies the parties by

---

**2.** The examiner may also reconsider the determination on his own motion or he can file an appeal himself. TEX. LAB.CODE ANN. §§ 212.053(2), 212.054.

mail of its decision. *Id.* § 212.152. A decision of the Commission becomes final fourteen days after it is mailed unless, before that date, the Commission, by order, reopens the appeal or a party to the appeal files a written motion for rehearing. *Id.* § 212.153.

A party aggrieved by a final decision of the Commission may obtain judicial review of the decision by timely bringing an action in a court of competent jurisdiction. *Id.* § 212.201. An aggrieved party need not file a motion for rehearing before seeking judicial review. *Id.* § 212.203. Judicial review is by trial de novo. *Id.* § 212.202.

### Texas Workforce Commission

Also germane to the issues in this case are the structure and duties of the Commission. The Commission is a state agency whose duties include administration of the unemployment compensation insurance program in this State. *Id.* § 301.001. The Commission is composed of three members appointed by the governor. The governor appoints one member to represent labor, one to represent employers, and one to represent the public. *Id.* § 301.002. The commissioner representing the public acts as the chair when the Commission reviews appeal tribunal decisions. *Id.* § 301.006.

### Factual and Procedural Background

Turning to the case at bar, the summary judgment record reveals that in August 1994, Remington discharged Scott. Scott filed a claim for unemployment benefits. The Commission initially determined that Scott was discharged for misconduct and was therefore disqualified from receiving unemployment benefits. *See id.* § 207.044. Scott appealed the initial determination. The appeal tribunal reversed the initial determination and instead determined that Scott was eligible for unemployment benefits. Remington appealed the decision of the appeal tribunal to the three-member Commission. The commissioners appointed to represent labor and the public voted to affirm the decision of the appeal tribunal, and the commissioner appointed to represent employers voted to reverse. Therefore, by majority vote, the Commission affirmed the appeal tribunal.

Remington filed a motion for rehearing. Before the Commission considered the motion, the commissioner appointed to represent the public resigned from office. Thereafter, the two remaining commissioners considered the motion. The commissioner representing labor sided with Scott, and the commissioner representing employers sided with Remington. Because two commissioners did not vote to overturn it, the prior Commission decision remained in full force.

### Remington's Motion for Summary Judgment

After its motion for rehearing was overruled, Remington filed this suit for judicial review and declaratory relief in state district court. In its motion for summary judgment, Remington noted that the Commission is statutorily composed of three members, one representing employers, one representing labor, and one representing the public. However, when its motion for rehearing was determined, the commissioner representing the public was absent. Remington asserted that (1) the Commission is statutorily enjoined from acting with only two commissioners, and (2) the Commission deprived Remington of due process and equal protection of the law by deciding its motion for rehearing during a vacancy of the commissioner representing the public. The trial court agreed and granted summary judgment in favor of Remington.

### Summary Judgment Standard of Review

The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Jensen Constr. Co. v. Dallas County,* 920 S.W.2d 761, 767 (Tex.App.—Dallas 1996, writ denied). In reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary

judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### Legislative Intent

■ In point of error number one, the Commission asserts that the trial court erred in finding the Commission incapable of any authorized action during the vacancy of one commissioner. In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider, among other matters, the circumstances under which the statute was enacted and its legislative history. TEX. GOV'T CODE ANN. § 311.023(2)–(3) (Vernon 1988). Prior to codification, the Texas Unemployment Compensation Act (TUCA) contained a provision that authorized actions taken by a quorum of the three-member Commission. TEX.REV. CIV. STAT. ANN. art. 5221b–8(g) (Vernon 1989), *repealed by* Act of May 22 1993, 73d Leg., R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 987, 1273. When the TUCA was codified into the labor code, article 5221b–8(g) was omitted. In its motion for summary judgment, Remington argued that the absence of article 5221b–8(g) in the labor code proves the legislative intent that the Commission must act with three sitting members. We disagree.

The codification of the labor code was part of the Texas Legislative Council Statutory Revision Program. *See* TEX. GOV'T CODE ANN. § 323.007(a) (Vernon 1988).[3] The purpose of the program is to "clarify and simplify the statutes and to make the statutes more accessible, understandable and usable." *Id.* When revising a statute, the council is enjoined from altering the "sense, meaning, or effect of the statute." *Id.* § 323.007(b). The council prepares a "Revisor's Report" that is submitted with the codification legislation. *Id.* § 323.007(c)(3). The revisor's

notes are routinely relied upon to determine legislative intent. *See, e.g., Leskinen v. Burford,* 892 S.W.2d 135, 136 (Tex.App.—Houston [14th Dist.] 1994, no writ); *City of Fort Worth v. Harty,* 862 S.W.2d 776, 779 (Tex. App.—Fort Worth 1993, writ denied).

In this case, the revisor's report specifically addresses the omission of article 5221b–8(g) and gives the reasoning behind the omission. The revisor's notes state:

(2) The revised law omits V.A.C.S. Article 5221b–8(g), regarding the quorum necessary for the commission, because it is substantively identical to the quorum provision provided by Section 311.013, Government Code (Code Construction Act). It is unnecessary to state that a vacancy does not impair the ability of the remaining commission members to act because joint authority given to the members of the commission may be exercised by a majority of the commission unless expressly provided otherwise. (See Section 312.004, Government Code).

The revisor's notes reflect that article 5221b–8(g) was omitted because it duplicated section 311.013 of the government code, which provides a "grant of authority to three or more persons as a public body confers the authority on a majority of the number of members fixed by statute." TEX. GOV'T CODE ANN. § 311.013(a). Thus, the legislative council, in omitting article 5221b–8(g), did not intend to invalidate actions by a quorum of the Commission, but instead acted consistently with its statutory mandate to make only nonsubstantive changes intended to clarify and simplify a statute and to make the statute more accessible, understandable, and usable. *Id.* § 323.007(a)–(b).

Furthermore, we note that when the Commission removes a pending claim to itself, a quorum of the Commission hears the proceeding. TEX. LAB.CODE ANN. § 212.105(b). Thus, the legislature did not view the actions of a quorum of the statutorily fixed three member Commission as *per se* impermissible. Accordingly, we conclude that the legislature

---

**3.** The Texas Legislative Council is a legislative agency composed of the lieutenant governor, the speaker of the house of representatives, the chairs of the senate and house administration committees, four other senators, and nine other representatives. TEX. GOV'T CODE ANN. § 323.001(a)–(b).

intended that two members of the Commission can validly act and exercise the full authority of the Commission as granted in the labor code.

### Ordinary Meaning

■ Having ascertained the legislative intent, it follows as a matter of course that we shall construe the questioned part of the statute so as to give effect to the purpose of the legislature. *Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979); *Gill–Massar v. Dallas County Comm'rs Court,* 781 S.W.2d 612, 617 (Tex.App.—Dallas 1989, no writ). Courts are not responsible, however, for omissions in legislation but only for giving a true and fair interpretation of the enactment as written. This means an interpretation that is not exaggerated, forced, or strained but one the ordinary meaning of the words will fairly sanction and clearly sustain. *Gill–Massar,* 781 S.W.2d at 616. The labor code designates the commissioner representing the public to act as chair when the Commission considers appeals. Tex. Lab.Code Ann. § 301.006(b)(1). Remington argues that the ordinary meaning of that provision requires the presence of the public commissioner during the appeal process. We disagree. In light of the legislative intent, we conclude section 301.006(b)(1) designates the public commissioner as chair when he is present; however, if he is not present, a quorum of the Commission retains authority to act.

For the reasons set forth above, we sustain the Commission's first point of error.

### Constitutionality

■ In point of error number two, the Commission asserts that the trial court erred in finding the Commission violated Remington's constitutional rights by ruling on its motion for rehearing during a vacancy of the commissioner representing the public. In addressing this issue, we initially note that where a party attacks a statute's constitutionality, every possible presumption obtains in favor of the constitutionality of the statute until the contrary is shown beyond a reasonable doubt. *State v. Hogg,* 123 Tex. 568, 578, 72 S.W.2d 593, 593 (1934) (op. on reh'g).

### 1. Due Process

■ Remington argues that its due process rights were violated under both the United States and Texas Constitutions. The United States Constitution provides:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. . . .

U.S. Const. Amend. XIV, § 1. The Texas Constitution provides similar protection:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Tex. Const. art. I, § 19. The Texas Constitution is textually different from the United States Constitution in that it refers to "due course" rather than "due process." Nevertheless, the Texas Supreme Court has concluded there is no meaningful distinction between these terms. *University of Tex. Medical School v. Than,* 901 S.W.2d 926, 929 (Tex.1995). As a result, in addressing Remington's due course claim, we "traditionally [follow] contemporary federal due process interpretations of procedural due process issues." *Id.* Therefore, we will consider Remington's federal due process claim and its state due course claim together.

The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play long known to our law. *State v. Crank,* 666 S.W.2d 91, 94 (Tex.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984). At a minimum, this requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Remington argues that the review in this case was not "meaningful" because the commissioner representing the public was absent when its motion for rehearing was determined. Remington reasons that review

cannot be meaningful if one appellate commissioner is "biased" in favor of management and one in favor of labor because there is inherently a one-to-one split in the decision and, therefore, an automatic affirmance of the decision below.[4] Remington's focus, however, is too narrow. The Commission's disposition of the motion for rehearing cannot be considered in a vacuum. The issue properly framed is, *in light of all the circumstances,* did Remington receive the process it was due. *See Guerrero–Ramirez v. Board of Medical Examiners,* 867 S.W.2d 911, 916 (Tex.App.—Austin 1993, no writ). We conclude that Remington was afforded due process.

■ We start our analysis with the proposition that the Commission and its examiners perform a quasi-judicial function at the administrative level and are presumed to be unbiased. *See Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 1669–70, 72 L.Ed.2d 1 (1982). In fact, Remington does not dispute that it was afforded an impartial examiner at the initial determination and at the appeal tribunal. Nor does Remington contest the impartiality of the three-member Commission that affirmed the appeal tribunal decision. Remington questions the impartiality of only the quorum that decided its motion for rehearing. Assuming *arguendo* that the quorum was "biased," for the reasons that follow, we find no due process violation.

An administrative motion for rehearing serves a limited purpose. An aggrieved party need not file one before seeking judicial review. TEX. LAB.CODE ANN. § 212.201 (Vernon). Such motions will not be granted unless *each* of the following three criteria. There must be:

(1) an offering of new evidence which was unavailable at the appeal tribunal level.

(2) a compelling reason why the evidence was not presented earlier.

(3) a specific explanation of how consideration of the evidence would change the outcome of the case.

40 TEX.ADMIN.CODE § 815.17(g)(2).[5] Remington did not present summary judgment evidence (or argument) that its administrative motion for rehearing satisfied the above criteria. Thus, Remington's motion appears to have been an unnecessary prelude to seeking judicial review.

■ Furthermore, judicial review is de novo. TEX. LAB.CODE ANN. § 212.202. There is no violation of due process if provision is made for a trial de novo in the district court on the issues passed upon by an administrative board. *See Francisco v. Board of Dental Examiners,* 149 S.W.2d 619, 622 (Tex.Civ. App.—Austin 1941, writ ref'd); *see also J.B. Advertising v. Sign Bd. of Appeals,* 883 S.W.2d 443, 449 (Tex.App.—Eastland 1994, writ denied); *Keggereis v. Dallas Cent. Appraisal Dist.,* 749 S.W.2d 516, 518 (Tex. App.—Dallas 1988, no writ); *Big D Bamboo, Inc. v. State,* 567 S.W.2d 915, 917 (Tex.Civ. App.—Beaumont 1978, no writ).

■ In summary, it is undisputed that Remington's claim was adjudicated at the administrative level at least three times by at least five impartial commissioners or examiners. Remington was accorded a full evidentiary hearing including the right to subpoena witnesses. Remington's administrative motion for rehearing appears to have been an unnecessary formality. And, regardless of what happened at the administrative level, Remington could (and did) avail itself of the protection of the district court for trial de novo. Under these circumstances, even assuming the rehearing panel was "biased," we conclude that Remington was accorded the opportunity to be heard at a meaningful time and in a meaningful manner, and it received due process of law.

---

4. Remington argues that the commissioners are biased because the labor code requires the governor to appoint one to represent labor and one to represent employers. *See* TEX. LAB.CODE ANN. § 301.002. Remington does not argue that the commissioners were disqualified because they had a pecuniary interest in the case or a familial relationship to the parties, or that they should

have recused themselves because they had personal knowledge of disputed facts.

5. There are limited exceptions to these requirements not germane to the facts of this case. *See* 40 TEX ADMIN.CODE § 815.17(g)(3).

## 2. Equal Protection

Remington also argues that the Commission denied it equal protection of the law. In its motion for summary judgment, Remington did not specify whether it was relying on the federal or state constitutional guarantee of equal protection. On appeal, Remington asserts it relied on both. Remington reasons that other businesses appealing to the Commission had the "benefit of the counsel and judgment of *all* Commissioners to whom the legislature has entrusted to make a decision." Because Remington did not, it was denied equal protection. We have already determined that the legislature contemplated that two commissioners could exercise the full authority of the Commission. We have also determined that the Commission accorded Remington due process of law. Thus, we reject the argument that other businesses appearing before the Commission received benefits not conferred upon Remington.

Having found that the Commission did not violate the constitutional rights of Remington, we sustain the Commission's second point of error.

### Conclusion

For the reasons set forth above, we reverse the judgment of the trial court and remand this matter for trial in accordance with sections 212.201 and 212.202 of the labor code.