# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00125-CV

---

**L. R., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE DISTRICT COURT OF LLANO COUNTY, 424TH JUDICIAL DISTRICT
NO. 20180, HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

L.R., herein "Lori," appeals from the termination of her parental rights to her daughter "Abby," who was almost three at the time of the final hearing.[1]  We affirm the court's order of termination.

### Standard of Review

A trial court may terminate a parent's rights to her child if clear and convincing evidence shows that (1) a parent has committed conduct that amounts to a statutory ground for termination and (2) termination of her rights would be in the child's best interest.  Tex. Fam. Code § 161.001; *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014).  In reviewing the legal sufficiency of the evidence in such a case, we credit evidence that supports the determination if a reasonable factfinder

---

[1]  We will refer to the child and other family members involved in this case by pseudonyms.  *See* Tex. R. App. P. 9.8.

could have done so and disregard contrary evidence unless a reasonable factfinder could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We "should not disregard undisputed facts that do not support" the determination, and "even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true." *K.M.L.*, 443 S.W.3d at 113. In evaluating factual sufficiency, we view the entire record and uphold the finding unless the disputed evidence that could not reasonably have been credited in favor of a finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction that the Department's allegations were true. *In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014). We defer to the factfinder's reasonable determination on issues of credibility that involve an evaluation of appearance or demeanor. *J.P.B.*, 180 S.W.3d at 573; *see A.B.*, 437 S.W.3d at 503 (reviewing court must defer to "factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses").

A factfinder's best-interest determination is reviewed in light of the non-exhaustive list of considerations set out in *Holley v. Adams*: the child's wishes, if the child is of an appropriate age to express such wishes; the child's present and future emotional and physical needs; present and future emotional and physical danger to the child; the parenting abilities of the individuals seeking custody; programs available to assist those people to promote the child's best interest; plans for the child by the people seeking or agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the parent-child relationship is improper; and any excuse for the parent's acts or omissions. 544 S.W.2d 367, 371-72 (Tex. 1976).

2

The State is not required to prove all of the *Holley* factors "as a condition precedent to parental termination," and a lack of evidence about some does not "preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Robert T. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00061-CV, 2013 WL 812116, at *12 (Tex. App.—Austin Mar. 1, 2013, no pet.) (mem. op.). A parent's rights may not be terminated merely because the child might be better off living elsewhere, but "a factfinder can consider that a child's best interest may be served by termination of parental rights so that adoption may occur rather than the impermanent foster-care arrangement that would result if termination were not ordered." *Robert T.*, 2013 WL 812116, at *12.

### Factual Summary

In June 2017, the Department filed its original petition for conservatorship over Abby, who was born in March 2015. The Department sought conservatorship after receiving a report that Abby had been physically abused by "Ginny," Lori's girlfriend, and neglected by Lori. Abby was removed from Lori's care and placed with Wanda, Abby's maternal grandmother, where she remained throughout the proceeding. Lori was ordered to participate in random drug testing, provide proof of employment, participate in parenting classes, complete a drug and alcohol assessment and follow all resulting recommendations, complete a psychological evaluation and follow all resulting

3

recommendations, participate in therapy, and show herself able to provide a safe and stable home for Abby.

The trial court held a final hearing in this case on January 10, 2018. Lori did not appear. After the witnesses were sworn, Department caseworker Amy Brown stated that although Lori had attended the last hearing before the trial court in November, she did not attend the final permanency conference held after that hearing at the Department's offices. Brown said:

> So mom was supposedly on her way, but she never showed up. We tried to call her on the phone so she could participate by phone. The problem is that I have two drug tests on her and five times that she's went to therapy. That's it. That's all I got. And I even spoke to Deb Taber, who is her therapist who she was actually enjoying seeing in therapy, and she even recommends that we terminate her rights and give grandma the adoption of this child so that grandma understands the severity of keeping this child safe.

Brown explained that another caseworker was initially assigned to the case and that Brown took over in early September 2017 when the original caseworker left the Department. Since then, Brown testified, she had made contact with Lori "almost once a month until last month." Brown tried to get in touch with Lori in December 2017 but did not make contact with her "because she was in between homes and not answering her phone and that sort of thing."

Brown testified that in her conversations with Lori, Lori never disputed the accuracy of the information provided in the Department's affidavit supporting its petition for conservatorship. Brown did not testify directly about the allegations in the removal affidavit, nor was the affidavit introduced into evidence. However, Brown testified that Lori did not deny the allegations in the affidavit, including allegations that Abby was found in a hotel room, that Lori had been arrested for

4

prostitution, that Abby had thrush and lice upon her removal, that there were concerns about malnutrition upon her removal, and that an unknown man was asleep in a bed in the hotel room where Abby was found. Brown also said Lori did not deny that Abby had been burned by a cigarette, but she explained to Brown that it happened accidentally when Abby "bumped into the cigarette."

Brown testified that Lori was given a service plan, which required three clean drug tests before Lori could have visitation with Abby. Lori took two drug tests in September, both of which were negative, but when Brown asked her to take a hair follicle test in September, she "relayed to me that she would fail and that she would just rather do it through UAs and then has not been back." Brown testified that Lori had missed twenty-four drug tests and that Lori had "had no contact with the child" since her removal in June 2017. Lori had not completed the required parenting class, nor had Brown received any indication that Lori had participated in "intensive outpatient" as recommended by her drug and alcohol assessment. Brown said that in September, she had visited Lori's apartment and that although the apartment appeared clean, she had concerns about the stability of Lori's living arrangements because it was a month-to-month lease and Brown had concerns about how Lori was paying her rent when "she does not have a consistent form of income." Brown also stated that Lori "is also supposedly now back with [Ginny], who was also part of the original case and the reason we removed." The attorney ad litem said that Wanda "reported the same thing to me, that mom is back with [Ginny] and living in hotels."

Brown testified that before the Department filed its petition, Wanda frequently took care of Abby "so that she could keep [Abby] safe," and that Wanda reported that Abby had lived with Wanda for "all but about five months" of her life. The Department sought conservatorship

5

because Lori kept taking Abby back and "would not leave [Abby] with" Wanda. Asked about how Abby was doing in her placement with Wanda, Brown said Wanda was "[m]ost definitely" meeting Abby's needs and able to provide a safe and stable home. Wanda had added a room onto her house for Abby, and Brown testified:

> [Abby] just loves her house. She has a reading nook in it. And she is a bit of a princess and grandma makes sure that she knows that. She is really—I've never heard grandma raise her voice. I've never seen her get overwhelmed or anything like that. She is always so calm and caring with [Abby] and [Abby] just seems happy and thriving there. She's gained weight. She's gotten taller. She doesn't use words anymore that she shouldn't use. She just seems comfortable and looks to grandma for comfort.

Glenda Hartman, the CASA volunteer assigned to the case, testified similarly, saying, "I think [Abby] is in the absolute best place that she can be and I agree with the termination of the [mother's] rights . . . . [Lori's] contact with her would be detrimental to her, and so I would support termination of all the parental rights and let [Abby] stay where she's at with her grandmother."

At the conclusion of the testimony, Lori's attorney said, "I know that [Lori] is very happy with her child in the placement that she's in and I know she's told me and probably everybody else that she's very confident that she's well taken care of in the maternal grandmother's home. I also know that she does not want her rights terminated and that she does want to have contact with her child in whatever way that the Court sees fit, but I—but I also know that her number one request would be for [Abby] to stay with her mother." The trial court observed that Lori had been present at the November hearing and that she "looked good" and participated in the hearing. The court further noted that "on that day we ordered mom's visits to be supervised by the Department. If dirty,

6

then after three clean consecutive UAs. You know this is my standard rules. Hair strand as requested by the Department. Don't alter hair or toenails because we let her have her nails for her job." Lori's attorney stated that she believed Lori knew and understood those orders, and the court observed that it had informed Lori of the date of the final hearing in January. The court then stated that it found that there was clear and convincing evidence that Lori's rights should be terminated.

Following the final hearing, the trial court[2] signed an order finding by clear and convincing evidence that Lori had knowingly placed or allowed Abby to remain in conditions that endangered her well-being; engaged in conduct or knowingly placed her with someone who engaged in conduct that endangered her well-being; constructively abandoned Abby, who had been in the Department's conservatorship for at least six months; and used a controlled substance in a manner that endangered Abby and had not completed a substance abuse program or had continued to use a controlled substance after completing a substance abuse program. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (P). The court also found that termination of Lori's parental rights was in Abby's best interest. *See id.* § 161.001(b)(2). On appeal, Lori challenges the legal and factually sufficient evidence supporting the trial court's findings.

## Discussion

Lori argues that the evidence is legally and factually insufficient to support the trial court's findings as to grounds for termination and best interest. She asserts that the testimony at trial

---

[2] The order terminating Lori's parental rights was signed by an associate judge. When Lori did not seek a de novo hearing in the referring court, the order became the order of the referring trial court. *See* Tex. Fam. Code § 201.2041(a).

7

"was comprised wholly of speculation and hearsay," and argues that the court "could not reasonably have formed a firm conviction of belief" of the grounds asserted for termination "based solely on hearsay and on testimony that [Lori] failed to deny allegations that were alleged in an affidavit that was not evidence at trial." Lori acknowledges, however, that there were no objections raised to any of the testimony. Thus, hearsay evidence may support the trial court's determinations. *See* Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."); *Niche Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 571 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Unobjected-to hearsay properly may be considered in analyzing the sufficiency of the evidence supporting a jury verdict."); *Guerrero-Ramirez v. Texas State Bd. of Med. Exam'rs*, 867 S.W.2d 911, 921 (Tex. App.—Austin 1993, no writ) ("Appellant maintains that this evidence is 'rank hearsay,' and suggests that it therefore cannot constitute evidence supporting the Board's findings. However, hearsay admitted without objection does not lack probative value.").

Subsection (N) allows for termination if the parent:

constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:

(i) the department has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment.

8

Tex. Fam. Code § 161.001(b)(1)(N). Lori disputes the sufficiency of the evidence showing that Lori "did not regularly visit or maintain significant contact" with Abby, arguing that she was prevented by the Department from having visitations, and thus "her contact with the Department was the only possible means of staying in contact with the child."[3] She also argues that there was "scant evidence" that she had demonstrated an inability to provide a safe environment for Abby.

Brown testified that Lori had not seen Abby since June 2017. The Department provided Lori with a safety plan that required her to have three clean drug tests before having visitation, and Brown testified that Lori had missed more than twenty drug tests. Brown further testified to numerous other ways in which Lori had not complied with requirements of the safety plan, such as completing parenting classes or participating in recommended treatment. Further, although Brown testified that Lori's apartment seemed adequate when she visited in September, Brown also had concerns at the time about the stability of Lori's housing situation due to her lack of steady income, and Brown had since been informed that Lori and Ginny had reunited and were living in hotels again. Lori did not attend the final hearing, and there was no evidence countering Brown's testimony about Lori's failure to comply with the service plan.

The record indicates that it was Lori's own conduct that led to her being denied visitation with Abby, and there was no indication that the Department had somehow unreasonably

---

[3] Lori does not dispute that Abby had been in the Department's care for at least six months or that the Department had made reasonable efforts at reunification. *See In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (Department's provision of safety plan "is ordinarily considered a reasonable effort to return a child to its parent"); *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) ("preparation and administration of a service plan for the parent constitutes evidence" of reasonable efforts to return child).

interfered with her efforts to earn back visitation. *See In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (evidence was sufficient to support constructive abandonment finding when mother did not fulfill requirements of service plan, tested positive for drugs, and "intermittently" visited child for several months but then failed to see child in five months before trial); *In re P.R.*, 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.) (evidence was sufficient when mother sporadically visited child, used drugs, and failed to comply with service plan). Although Lori had an apartment in September 2017, by the time of the final hearing in January 2018, she was apparently again living out of hotels and reunited with her girlfriend, whom the Department believed had abused Abby. Whether viewed through the lens of legal or factual sufficiency, the record, although sparse, contains evidence from which the trial court could reasonably have formed a firm conviction or belief that Lori had neither regularly visited or maintained significant contact with Abby nor demonstrated an ability to provide a safe environment. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Because the evidence supports one of the enumerated grounds for termination, we need not address Lori's arguments related to subsections (D), (E), or (P). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.).

As for best interest, the evidence was that at the time the Department intervened and sought conservatorship, Lori had been arrested for prostitution, leaving Abby in a hotel room. Abby had at some point been burned by a cigarette, she had thrush and lice, and the Department was concerned that she was malnourished. During the pendency of the termination proceeding, Lori had missed more than twenty drug tests, testing negative twice but telling Brown she would fail a

10

follow-up hair follicle test. Since her removal and placement with Wanda, Abby was thriving and happy. The Department intended for Wanda to adopt Abby, and Wanda told the Department that she was "praying" for termination so that she could adopt Abby and be sure that she had legal rights to keep her. Hartman believed that termination and adoption were in Abby's best interest, and Brown testified that Lori's therapist recommended termination of Lori's rights so that Wanda could adopt Abby. Again, we recognize that the evidence was somewhat sparse, but whether viewed through the lens of legal or factual sufficiency, we cannot conclude that the evidence was such that the trial court could not have reached a firm belief or conviction that termination was in Abby's best interests. *See, e.g.*, *In re U.P.*, 105 S.W.3d 222, 230-32 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (evidence of best interest sufficient when child was well cared for by foster family, had bonded with foster family, and had spent little time with parent, parents' drug use endangered child, father had been convicted of violent crime, father could not yet provide stable home, and Department and CASA recommended that foster family be allowed to adopt child).

## Conclusion

We have held that legally and factually sufficient evidence supports the trial court's finding of one statutory ground for termination and its finding of best interest. We therefore affirm the trial court's final order terminating Lori's parental rights.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   June 21, 2018

12