

**NUMBER 13-07-00297-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**ROSITA DE LA PAZ,**　　　　　　　　　　　　　　　　　　**Appellant,**

**v.**

**ADAN DE LA PAZ,**　　　　　　　　　　　　　　　　　　　**Appellee.**

---

**On appeal from the 28th District Court of Nueces County, Texas.**

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

This case involves an acrimonious divorce between appellant, Rosita De La Paz, and appellee, Adan De La Paz. Rosita appeals the final divorce decree entered by the trial court on February 22, 2007. By three issues, which can be categorized properly as two, Rosita contends that: (1) the trial court abused its discretion in making an unreasonable

and arbitrary division of the marital estate; and (2) she was denied her due process right to be heard when the trial court denied her request for more time to seek counsel. We affirm.

## I. BACKGROUND

On December 1, 2004, Rosita filed an original petition for divorce on the grounds that the marriage had become insupportable because of discord or conflict of personalities. In her petition, Rosita requested a temporary restraining order against Adan, temporary orders concerning the use of the marital property, temporary exclusive use of the marital residence, and temporary support, among other things. In addition, Rosita attached an affidavit stating:

> I believe that my husband, Adan De La Paz[,] has transferred property belonging to our marital estate without my knowledge or consent and without making any accounting for the proceeds from doing so. Based on his history of having done so and his statements to me concerning our property, I believe he intends to continue to do so.

Adan was personally served with a copy of the petition on December 1, 2004. On December 15, 2004, Adan filed his original counter-petition for divorce, original answer to Rosita's petition, and a motion for temporary orders, which mirrored Rosita's request for temporary orders.

On May 18, 2006, the trial court conducted the final hearing in this case.[1] A final decree of divorce was signed by the trial court on June 2, 2006. The final decree awarded specific property to each spouse as their sole and separate property. Notably, each were awarded (1) a one-half undivided interest in 1533 16th Street in Corpus Christi, Texas, and

---

[1] Adan did not appear at this hearing.

(2) a one-half undivided interest in 1537 16th Street in Corpus Christi.  In addition, Rosita

was awarded a full interest in 1541 16th Street in Corpus Christi as her sole and separate

property.

Adan filed a motion for new trial on July 3, 2006.  In his motion, Adan explained that

he did not participate in the May 18, 2006 final hearing because he was not provided with

notice of the trial setting.  Adan demonstrated that notice was sent to 1541 16th Street in

Corpus Christi, where he and Rosita resided during the course of the divorce proceedings.

Adan suggested that Rosita intercepted the notice and informed him that the case had

already been dropped.  Furthermore, Adan argued that the trial court awarded Rosita

property that was his separate property.  In support of his motion for new trial, Adan

executed an affidavit where he stated the following:

> I was not aware of the trial setting in this case on May 18, 2006.  If a
> notice was mailed to me at 1541 16th Street, Corpus Christi, Texas 78404,
> I did not receive it, nor did I have any other notice of that setting.  I was not
> the only person residing in that house at the time.  Among others, my wife,
> Rosita De La Paz, the Petitioner in this case, was living there.  I would not
> have been expecting a notice, since my wife had led me to believe that this
> case, which was filed in 2004, had been dropped.  I also never received a
> notice that a judgment had been entered in this case.  I only learned of it on
> June 29, 2006, when I went to pay taxes on the house where I was living and
> found out that it was no longer in my name.  I had lived with my wife and
> children in that house continuously throughout the divorce proceedings and
> since the decree was signed.
>
> . . . .
>
> The real property at 1541 16th Street, Corpus Christi, Texas, that was
> awarded to my wife was actually my separate property.  I owned it before we
> were married.  The real properties at 1533 16th Street and 1537 16th Street,
> which were awarded half to me and half to my wife, are owned by my
> mother.  I had owned them briefly, but they were transferred to my nephew,
> Robert De La Paz Alvarez, well before the divorce took place, and he later
> transferred them to my mother.  I had gotten them from my sister, Terry, as
> my separate property[.]  No community funds were used to purchase it from

3

her. The property was exchanged among my family members depending on who could keep up the taxes at any given time. The transfer to my nephew was not done with any intent to defraud the community and was never part of the community property. Except for a little money applied to property taxes, no funds of ours were expended on the property. We put more money into the bakery that my wife claims as her separate property than we did in the real property at 1533 and 1537 16th Street.

. . . .

The division of the actual community estate is disproportionately in favor of my wife.

The trial court subsequently denied Adan's motion for new trial on August 2, 2006. On August 11, 2006, Adan filed a motion for leave of court and an amended motion for new trial, advancing many of the same arguments as contained in the original motion for new trial but with additional analysis and documentary evidence. Notably, in his amended motion for new trial, Adan stated that the marriage between he and Rosita occurred in 1995. The trial court signed an order granting Adan's motion for leave and amended motion for new trial on August 22, 2006. The order acknowledged that the parties had agreed to the motion and that the trial court's June 2, 2006 final decree was invalid because Adan neither received notice of nor participated in the earlier trial setting. Thus, the June 2, 2006 final decree was vacated.

The trial court set the case for a final hearing on December 15, 2006. Rosita then filed a first amended original petition for divorce on November 21, 2006. In this filing, Rosita alleged that she and Adan were married by common law on January 24, 1989, and thereafter entered into a ceremonial marriage on September 10, 1994.[2] At the scheduled

---

[2] Rosita and Adan's marriage license was issued on September 6, 1994, and was filed in the Nueces County public records on September 12, 1994.

4

December 15, 2006 hearing, the trial court granted Rosita's request for more time to retain counsel.

The final hearing was then rescheduled for February 2, 2007. Prior to opening arguments, Rosita requested additional time from the trial court to retain counsel, but her request was denied. After hearing arguments, the trial court took the matter under advisement. In the meantime, Adan submitted a proposed final divorce decree. On February 19, 2007, Rosita filed objections to Adan's proposed final decree of divorce. In her objections, Rosita alleged that Adan's proposed distribution of the marital estate was unfair because: (1) the proposed decree ordered the sale of 1541 16th Street, where she had lived for over fifteen years; and (2) it divested her of her previously granted community interest in 1533 and 1537 16th Street while Adan received "all of the interest in the other two houses acquired during their marriage, 1533 and 1537 16th Street." Rosita further alleged that once the home at 1541 16th Street was sold and all encumbrances were removed and fees were paid, she would only be entitled to about $5,000.

Over Rosita's objections, the trial court signed a final decree of divorce on February 22, 2007, which substantially matched Adan's proposed decree. The divorce decree itemized the sole and separate property of each spouse and ordered the sale of 1541 16th Street with the proceeds to be split by the parties once all outstanding encumbrances were removed and all fees associated with the property were paid. However, the decree did not reference the properties at 1533 and 1537 16th Street.

On March 9, 2007, Rosita filed a motion for new trial, asserting that the trial court denied her due process by requiring her to proceed at the February 2, 2007 final hearing without allowing her adequate time to retain counsel, and that, as a result of the trial court's

5

denial of her due process rights, she lost all of her community interest in two of the houses on 16th Street. The trial court did not rule on Rosita's motion for new trial; therefore, it was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal ensued.

## II. DUE PROCESS AND ROSITA'S MOTION FOR CONTINUANCE

By her second issue, Rosita argues that by denying her additional time to retain counsel at the February 2, 2007 final hearing, the trial court prevented her from being heard meaningfully. Rosita further argues that her lack of proficiency in the English language and her lack of knowledge of the law caused her to be "unheard or misinterpreted," thus constituting a denial of her due process rights. Adan, proceeding pro se on appeal, argues that the record clearly establishes that Rosita understood what she was doing at the February 2, 2007 final hearing; therefore, she was not denied due process of law.

### A. Standard of Review

We review a denial of a continuance under an abuse of discretion standard. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). The trial court's action in denying a continuance will not be disturbed on appeal unless the record discloses a clear abuse of discretion. *Id.* A trial court abuses its discretion if it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

A motion for continuance may not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251; *O'Connor v. O'Connor*, 245 S.W.3d 511, 516 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

6

Absence of counsel, standing alone, is not good cause for a continuance. TEX. R. CIV. P. 253; *O'Connor*, 245 S.W.3d at 516. When withdrawal of counsel is the ground for continuance, the movant must show that failure to be represented by counsel at trial was not due to his or her own fault or negligence. *Villegas*, 711 S.W.2d at 626.

The *Villegas* court stated that: "The right to counsel is a valuable right; its unwarranted denial is reversible error. Therefore, when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Villegas*, 711 S.W.2d at 626 (citations omitted). Moreover, in reviewing the trial court's denial of a motion for continuance, the Austin Court of Appeals has noted that there is no mechanical test for determining when the denial is so arbitrary as to violate due process. *Guerrero-Ramirez v. Tex. State Bd. of Med. Examiners*, 867 S.W.2d 911, 916 (Tex. App.–Austin 1993, no writ) (citing *Ungar v. Sarafite*, 376 U.S. 575, 591 (1964)). Instead, the reviewing court must consider the circumstances presented to the trial judge at the time the request was made. *Id.* (citing *Ungar*, 376 U.S. at 591).

## B. Discussion

At the February 2, 2007 final hearing, the following exchange took place with respect to Rosita's failure to retain counsel:

THE COURT:     All right. Are you ready?

MRS. DE LA PAZ:  Yeah.

THE COURT:     Okay.

MRS. DE LA PAZ:  But I don't have a lawyer because I tried to get a lawyer. They said it was too quick and it would be some days.

And I said that if they give me 30 days so I can get a lawyer, because they couldn't—

THE COURT: When did you start looking for an attorney?

MRS. DE LA PAZ: As soon as they told me when I got out of there.

. . . .

THE COURT: That was back in December?

MRS. DE LA PAZ: Yes, ma'am.

THE COURT: So you had more than 30 days, because December 15th—

MRS. DE LA PAZ: And they were telling me they were in a—they have a case. So—

. . . .

MRS. DE LA PAZ: Yeah. But he said that he's busy, the attorney. And then I called somebody else close to where I work, and he said he had a case. And I called somebody else, and they had a case. So they said I have to wait. So I just came to tell you, you know, give me at least—you know, I will try this next time if you give me one more chance.

THE COURT: This has been since August that we've been trying to get this case heard.

MRS. DE LA PAZ: But I don't know why they want to—

THE COURT: August, September. We've got October, all of November, all of December, all of January. We're in February.

MRS. DE LA PAZ: But I don't know why they want to open it. The way you sealed the things that you gave me, my husband didn't like it. So he came and—

THE COURT: Well, that's why we set it for final hearing, to make it all

8

correct.  I don't know if I'm going to order the same things, but we need to have this case heard.  We're going to go forward.  Let me take care of the rest of my docket.  Take a seat, M[r]s. De La Paz.

. . . .

THE COURT:  What I'm thinking is that even if I proceed and go to final hearing and make a ruling, you know, that's not going to stop M[r]s. De La Paz from getting an attorney at that point and filing her motion for new trial saying that she was not represented and all these other things.  So I don't know what to do.

The problem is, M[r]s. De La Paz, on the other hand, you've had every opportunity to get your attorney since September.  No, really August, you know.  And I have every right to proceed without you having an attorney today.

MRS. DE LA PAZ:  Can you give me one more chance?  And I promise you I'll have an attorney.

THE COURT:  Let me see.  Okay.  Since August 29th there was a motion for continuance.  September 29th it was called for trial and M[r]s. De La Paz requested—I guess your attorney requested to withdraw.  So we reset this matter for another day.  At that point in time you knew that this case was going to be set and tried.  So we have October, November, December.  We came back in December. You were told to come back.  All of January and now we are in February.  That's what, five, six months?

MRS. DE LA PAZ:  Yes, ma'am.

Throughout the course of this case, Rosita has been represented by four different attorneys at different times.  At least two of the attorneys withdrew at Rosita's request.  Rosita did not specifically express to the trial court that she was diligent in procuring representation prior to the February 2, 2007 final hearing.  She merely stated that she

9

made a couple of phone calls to local attorneys. She did not specify when she began to search for legal representation, nor did she testify as to exactly whom she contacted. It is clear from the record before us and the testimony adduced at the February 2, 2007 final hearing that Rosita was not represented at the hearing due to her decisions to hire and fire several different attorneys. *See Villegas*, 711 S.W.2d at 626.

The record further reflects that the trial court and Adan's trial counsel questioned Rosita about the accumulation of property in the marital estate, and that she provided cogent, albeit argumentative, answers to the questions. Furthermore, Rosita participated in the cross-examination of Adan and never did request an interpreter. It is clear from our review of the record that Rosita understood the nature of the proceedings and that her proficiency with the English language was sufficient to represent herself at the hearing. Therefore, based on the foregoing, we cannot conclude that the trial court abused its discretion in denying Rosita's oral motion for continuance. *See id.* Accordingly, we overrule her second issue.

### III. THE TRIAL COURT'S DIVISION OF THE MARITAL ESTATE

In her first issue, Rosita asserts that the trial court abused its discretion in dividing the community property of the marital estate. Specifically, Rosita argues that: (1) the trial court's division of the marital estate was based on evidence that was not credible; and (2) she was "taken advantage of" at the February 2, 2007 final hearing because she was not represented by counsel. In particular, Rosita complains about the trial court's division of the properties at 1533, 1537, and 1541 16th Street as described in the final divorce decree. Adan counters by arguing that: (1) the properties have been in his family for over forty

years; (2) the properties were transferred to his son more than two years before Rosita filed her original petition for divorce; and (3) no community funds were used to purchase or maintain the properties.

## A. Standard of Review

The Texas Family Code requires the trial court to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard of the rights of each party . . . ." TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). We review the trial court's division of property in a divorce decree under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). "Mathematical precision in dividing property on divorce is usually not possible." *Id.* at 700. Wide latitude and discretion rests with the trial court, and it "is empowered to use its legal knowledge and its human understanding and experience." *Id.* We will reverse on appeal only if the property division is so disproportionate as to be manifestly unjust and unfair. *Smith v. Smith*, 22 S.W.3d 140, 143 (Tex. App.–Houston [14th Dist.] 2000, no pet.).

## B. Applicable Law

The Texas Family Code provides that property possessed by either spouse during or on the dissolution of marriage is presumed to be community property unless the spouse can prove by clear and convincing evidence that the property is his or her separate property. TEX. FAM. CODE ANN. § 3.003 (Vernon 2006); *see Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.–Fort Worth 2004, no pet.). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.*, 89

11

S.W.3d 17, 25 (Tex. 2002); *Mock v. Mock*, 216 S.W.3d 370, 372 (Tex. App.–Eastland 2006, no pet.). A party seeking to rebut the community presumption must trace the assets on hand during the marriage back to property that is separate in character. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975); *Boyd*, 131 S.W.3d at 612. Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Boyd*, 131 S.W.3d at 612. The burden of tracing is a difficult, but not impossible, burden to sustain. *Latham v. Allison*, 560 S.W.2d 481, 484 (Tex. Civ. App.–Fort Worth 1977, writ ref'd n.r.e.). We are to resolve any doubt as to the character of the property in favor of the community estate. *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.–Fort Worth 1983, writ ref'd n.r.e); *Contreras v. Contreras*, 590 S.W.2d 218, 221 (Tex. App.–Tyler 1979, no writ).

## C. Characterization of the Properties

In his amended motion for new trial, Adan provided, among other things, copies of deeds corresponding to two of the three properties in question—1533 and 1537 16th Street—and a tax return jointly filed by the couple in 1990. On the tax return, Rosita and Adan designated that they were married and were filing a joint tax return.[3]

### 1. 1533 and 1537 16th Street

With respect to the property at 1533 16th Street, Adan referenced a copy of a special warranty deed reflecting that Teresita De La Paz, his sister, conveyed the property

---

[3] Attached to Rosita's motion for new trial, among other things, was a birth certificate for the couple's only child. The birth certificate indicates that the child was born on January 4, 1990, and that she was born to "Mr. and Mrs. Adan De La Paz." Rosita argued that this denotation on the birth certificate is sufficient to establish that the couple held themselves out to be married prior to their ceremonial marriage on September 10, 1994.

to Adan on February 25, 1994. The deed further stated that the property was Adan's "separate property and estate . . . ." Adan paid $10.00 as consideration for the conveyance, but the deed does not reflect that Adan paid additional monies to acquire the property. At the February 7, 2007 final hearing, Adan testified that his mother lived at 1533 16th Street, and that he acquired the property before he married Rosita.

The deed corresponding to the property on 1537 16th Street indicated that Adan acquired the property from Ray Clark Hankins on October 22, 1996, for $10.00 consideration. Rosita testified at the February 7, 2007 final hearing that Adan's sister, Delia Ybarra, lived at 1537 16th Street. The record reflects that on May 10, 2002, Adan conveyed both 1533 and 1537 16th Street to his son, Robert De La Paz Alvarez, Jr. In this deed, Adan identified himself as "a single man" and as the owner of both properties. Later, on May 28, 2003, Robert conveyed the properties to Juanita De La Paz, Adan's mother.

**2. 1541 16th Street**

In his proposed division of property filed with the trial court, Adan included a copy of an "ASSUMPTION WARRANTY DEED WITH VENDOR'S LIEN" corresponding to the property at 1541 16th Street. This deed reflected that Adan, as "a single man," acquired the property at 1541 16th Street from Frank and Geneva Lucero Loera on June 10, 1993, for $10.00 in consideration and an assumption of the remaining balance of $26,000 on the note associated with the property. Adan admitted at the February 7, 2007 final hearing that both he and Rosita paid on the note. Furthermore, Rosita testified that she paid $451 per month to help Adan pay for the property.

Throughout the course of the divorce proceedings, Adan has argued that the three

13

properties—1533, 1537, and 1541 16th Street—have been in his family since 1962. He has stated that the reason the properties were conveyed to Robert in 2002 was because Adan was unable to pay the taxes on the property. Adan further stated that the family regularly conveyed property amongst themselves based on which family member could pay the applicable property taxes. Despite Adan's statements, neither party has adequately traced the funds used to purchase the three properties to establish the properties as their separate property, nor have they established that the properties were acquired before marriage or as a gift or bequest.[4] *See* TEX. FAM. CODE ANN. § 3.001(1), (2) (Vernon 2006) (providing that property is a spouse's separate property if it was owned or claimed by the spouse before marriage or if the property was acquired during marriage by "gift, devise, or descent"); *see also Mock*, 216 S.W.3d at 373 (holding that testimony that assets are separate property without any tracing is insufficient to rebut the community presumption). In addition, the record does not contain evidence proving that Frank and Geneva Lucero Loera and Ray Clark Hankins are members of the De La Paz family. Thus, Adan's argument that all three properties have been in his family since 1962 is undermined. Because the record suggests that Adan and Rosita were married as early as 1990, and because neither party traced the funds used to purchase the properties, we conclude that the community presumption holds and that the properties in question are part of the community estate. *See Cockerham*, 527 S.W.2d at 167; *Boyd*, 131 S.W.3d at 612.

**D. Joint Tenancy and 1533 and 1537 16th Street**

---

[4] Adan testified that at the time of the final hearing, he worked for Garcia's Holiday Tours as a mechanic. A copy of Adan's pay stub from Garcia's Holiday Tours for the week of April 4, 2006 to April 10, 2006, reflects that Adan made $416.59.

As previously mentioned, the trial court, in its final divorce decree, did not reference 1533 and 1537 16th Street and it ordered the sale of 1541 16th Street with the proceeds to be split amongst the parties after all fees are paid and encumbrances removed.[5]

Texas courts have held that when a court fails to divide property at the time of the divorce, the ex-spouses become tenants in common or joint owners of the property.[6] *In re Marriage of Notash*, 118 S.W.3d 868, 872 (Tex. App.–Texarkana 2003, no pet.) (citing *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. 1970), *questioned on other grounds by Jeffrey v. Kendrick*, 621 S.W.2d 207 (Tex. App.–Amarillo 1981, no writ); *In re Taylor*, 992 S.W.2d 616, 619 (Tex. App.–Texarkana 1999, no pet.); *Soto v. Soto*, 936 S.W.2d 338, 340 (Tex. App.–El Paso 1996, no writ); *Burgess v. Easley*, 893 S.W.2d 87, 90 (Tex. App.–Dallas 1994, no writ)); *see Bishop v. Bishop*, 74 S.W.3d 877, 879 (Tex. App.–San Antonio 2002, no pet.). We need only remand the entire community estate for a just and right division if the trial court mischaracterized the property and the mischaracterization of the property had more than a de minimus effect on the trial court's original division of the property. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Boyd*, 131 S.W.3d at 617; *Zeptner v. Zeptner*, 111 S.W.3d 727, 740 (Tex. App.–Fort Worth 2003, no pet.); *Robles v. Robles*, 965 S.W.2d 605, 615 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). Here, the trial court did not reference either the 1533 or 1537 16th Street properties much less characterize the properties as community property or separate property. In her motion for

[5] In her motion for new trial, Rosita does not complain about the trial court's division of 1541 16th Street. Furthermore, on appeal, Rosita's arguments center on the trial court's treatment or lack thereof of 1533 and 1537 16th Street; she fails to explain how the trial court abused its discretion in ordering the sale of 1541 16th Street. *See* TEX. R. APP. P. 38.1(h).

[6] A suit for partition of former community property is the proper means of dividing property between tenants in common. *Harrell v. Harrell*, 692 S.W.2d 876, 876 (Tex. 1985) (per curiam).

new trial and on appeal, Rosita assumes that the trial court concluded that these properties were Adan's separate property. However, because the trial court did not reference either 1533 or 1537 16th Street in the final divorce decree, and because we have already concluded that these properties were part of the community estate, Rosita and Adan own the properties as tenants in common as a matter of law. *See In re Marriage of Notash*, 118 S.W.3d at 872; *see also Busby*, 457 S.W.2d at 554; *Bishop*, 74 S.W.3d at 879; *Soto*, 936 S.W.2d at 340; *Burgess*, 893 S.W.2d at 90. On appeal, Rosita's arguments center on the characterization of the properties in question, but she has not directed us to evidence indicating that the trial court abused its discretion in dividing the marital property. *See* TEX. R. APP. P. 38.1(h). Accordingly, we overrule her first issue.

## IV. CONCLUSION

Having overruled both of Rosita's issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 7th day of May, 2009.

16